GIBSON et ux. v. ST. LOUIS, S. F. & T. RY. CO.

(Court of Civil Appeals of Texas. March 11, 1911. Rehearing Denied April 1, 1911.)

1. CARRIERS (§ 336*)—INJURIES TO PASSENGERS—CONTRIBUTORY NEGLIGENCE.

A passenger who obeyed the directions of the porter on the train to alight therefrom and remain standing outside in the cold, awaiting the train on which she should continue her journey, was not guilty of contributory negligence, and could recover for the injuries sustained in consequence of being exposed to the cold while waiting to change cars.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1357–1362; Dec. Dig. § 336.*]

2. TRIAL (§ 191*) — INSTRUCTIONS — ASSUMPTION OF FACTS.

Where there was no evidence of contributory negligence an instruction assuming that there was evidence that plaintiff was guilty of contributory negligence was erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by A. J. Gibson and wife against the St. Louis, San Francisco & Texas Railway Company. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

Andrews, Ball & Streetman and Head, Dillard, Smith & Head, for appellants. Wolfe & Maxey and John T. Suggs, for appellee.

BOOKHOUT, J. Appellants instituted this suit against the appellee on September 28, 1908, alleging that M. F. Gibson had suffered serious illness and consequent injury on account of being compelled to travel from Ft. Worth to Sherman in an insufficiently warmed car, and being compelled to remain exposed to the cold at Sherman while changing cars at that point. The damages were laid at $10,000. Negligence was charged against the appellee on account of the car

in which this appellant traveled not being sufficiently warmed, and in her being required to get out and remain in the cold at Sherman while waiting for another train on which to continue her journey; her entire trip, in so far as this claim is concerned, being over the line of defendant. Defendant demurred, pleaded a general denial, contributory negligence, assumed risk, and that the injuries, if any, were not proximately caused by the negligence alleged. A trial resulted in a verdict and judgment for defendant. Plaintiffs' motion for new trial having been overruled, they perfected an appeal.

Error is assigned that the court erred in giving its additional charge as follows: "In lieu of special charges requested by defendant and as an addition to paragraph 4 of the main charge, you are instructed as follows: If you believe from the evidence that plaintiff M. F. Gibson was taken sick on her return from Ft. Worth on the occasion in question, but you further believe from the evidence that said sickness was caused by exposing herself to the weather after she had disembarked from the train at Hickory on her route to her home, or was caused by the manner in which you find from the evidence she conducted herself while changing cars at Sherman on said trip, then in any of these events you will find for defendant."

It is insisted that the jury might have found thereunder that plaintiff M. F. Gibson contracted said illness while changing cars at Sherman, believing on account of the giving of said charge that there had been offered evidence warranting such finding, when in truth and in fact plaintiffs had alleged negligence on the part of defendant in respect to the providing facilities at Sherman to enable plaintiff to change cars, which negligence contributed to the injury of M. F. Gibson, and there was evidence introduced which would have supported a finding of the jury to the effect that said defendant was negligent in such respect, and that such negligence, in connection with the negligence in failing to heat said car as alleged, was the proximate cause of plaintiff M. F. Gibson's injury; and under said charge said jury could have found for the defendant, no matter how negligent they may have believed defendant to have been with respect to providing facilities for changing cars at Sherman.

We are of the opinion that this contention must be sustained. There was no evidence that the plaintiff was guilty of contributory negligence in the manner in which she conducted herself while changing cars at Sherman. She testified as follows: "That evening when I started from Ft. Worth the weather seemed to be very pleasant, but towards night it kept getting colder. I just thought it was about 7 or 8 o'clock when I reached Sherman. I don't know. I think it was

dark when I reach Sherman. I don't recollect. There wasn't any lights or anything; but then it seems like it was just starlight. It was the fore part of the night, but after I got up farther the moon rose. That car was cold to me. I suffered from cold. I had to wrap up my feet so I could keep warm. I had a shawl or cloak—I forget which it was—that I wrapped up in. Just after sundown it commenced getting cold to me. I just got so cold that I had to—I had on wraps as much as I needed; but my feet got so cold I had to wrap them up, and I did tolerably well then. When I got to Sherman, I did not stay in the car. The porter came along and told us we would all have to get out, and stand down on the ground until they could change cars. I was going to Hickory, Okl. The porter told me when I got to Sherman that I would have to get out of the car. I asked him if I would have to get out. My son had told me they would go straight on on this train, and I asked him if I would have to get out, and he said, 'Yes'; said, 'Every one get out.' I don't know where it was that I got off. I didn't see any depot or anything; but I reckon they must have run by it, looked like, to the yards there of some kind. They brought the train out. I was getting cold then. The wind was blowing so cold from the north. I wrapped my face up to keep from taking cold, but I did take cold. I think—it seemed to me like about five minutes, or maybe more, before I entered another car. I couldn't tell exactly how long. It seems like they ran the car I got out of off some place; but I never paid any attention to it. I did not get back on the same car. I got on another train. I got to Hickory about 11 o'clock, and I went home that night. I lived right in the town. When I got on the car here at Sherman and went on north, I did very well; was warm enough. I mean that car was comfortable. I think I suffered some ill effects from that ride from Ft. Worth to Sherman. I suffered several weeks before I was able to do anything or sit up; for about two or three weeks, or four, I forget which; and I commenced coughing before I got home that night, and kept getting worse until I finally got down."

Again, she testified on cross-examination: "I got very cold on that train. My feet got very cold, but then I got colder after they put me out in the open air than I had been at all. I don't know whether it was at the depot or not. I had wrapped my feet up in a shawl on the train, and when I got out on the cold ground I took the wraps off of my feet."

She further testified on redirect examination: "I testified on my direct examination that I got off the train here at Sherman and remained standing at that place where I got off for some time, until I boarded the other train. I think it was the porter that came through and told us we would all have to get out and stand out there; said just stand out there until they got the train by us. They had to take off some things off of this train for so long that we were on, and then it ran out and this other one came up, and we got on it. Some one on the train that I took to be the porter told us to get off and stand out there until this other train came up. I did not know when I got out there where the depot was. I never saw anything about the depot. I was not familiar with that locality. I didn't know anything about where the depot was. I didn't see anything like it. I had never been at Sherman and stopped over."

The charge complained of was erroneous, in that it assumed that there was evidence before the jury that Mrs. Gibson was guilty of contributory negligence as to the manner in which she conducted herself while changing cars at Sherman. There was no evidence tending to show that she was guilty of negligence in this respect. She was directed to alight from the train in which she had traveled from Ft. Worth, and stand out there until the train in which she was expected to continue her journey to Hickory came up. She acted in accordance with these instructions in making the change of cars. She was not guilty of contributory negligence in acting on these instructions.

For the error in giving said charge, the judgment is reversed, and the cause remanded.